OPINION
{¶ 1} Plaintiff-appellant, Tammy L. Thomas, appeals from a Columbiana County Common Pleas Court, Domestic Relations Division decision naming defendant-appellee, David G. Thomas, the primary residential parent of the parties' daughter.
 {¶ 2} Appellant and appellee share one child, McKaylie Dawn Thomas (d.o.b. 9/23/98). The parties were married on December 3, 1998. Appellant filed a complaint for divorce from appellee on October 25, 2001. While the divorce was pending, the trial court granted appellant temporary custody of McKaylie and ordered appellee to pay child support. The court appointed a guardian ad litem (GAL) for McKaylie.
 {¶ 3} The case proceeded to trial on November 14, 2002, with the main issue being McKaylie's custody. The court heard testimony from the parties, the GAL, and various friends and relatives. After considering the parties' post-trial briefs, the court entered its decision on January 8, 2003, naming appellee as McKaylie's primary residential parent. While it named appellee as the residential parent, the court stated that appellant should have "very liberal companionship" and urged the parties to work out an arrangement where McKaylie would split her time with her parents 50/50. The court stated that if the parties could not make such an arrangement, then at the least, appellant was to have standard visitation. Appellant filed her timely notice of appeal on February 3, 2003.
 {¶ 4} Appellant raises one assignment of error, which states:
 {¶ 5} "The trial court abused its discretion in naming appellee the primary residential parent of the parties' daughter."
 {¶ 6} Appellant argues the weight of the evidence demonstrated that it is in McKaylie's best interest for her to be designated the residential parent. She points to several factors in support. First, appellant asserts her home is more appropriate than appellee's because at her home, McKaylie has her own bedroom. Second, appellant claims that her work history and education make her a better choice to be the residential parent because she has a successful career as the owner of her own tax business and holds various certificates while appellee has been unemployed and while he was employed, he worked the swing shift. Third, she contends that she never denied appellee visitation, but that he hindered her visitation on a few occasions. Fourth, appellant notes that appellee failed to make some of his child support payments. Fifth, appellant claims appellee's behavior is obsessive and sometimes abusive. In addition to these factors, appellant contends the trial court should not have relied on McKaylie's paternal grandmother's and paternal aunt's testimony because they were predisposed to testify in appellee's favor and the GAL contradicted their testimony. Finally, appellant asserts the trial court incorrectly found that she is immature and that she has an "active social life" with "many boyfriends."
 {¶ 7} A trial court's decision regarding the custody of a child which is supported by competent and credible evidence will not be reversed absent an abuse of discretion. Booth v. Booth (1989),44 Ohio St.3d 142, syllabus. Abuse of discretion connotes more than an error in law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 8} When making an original allocation of parental rights and responsibilities, the trial court shall consider the best interest of the child. R.C. 3109.04(B)(1). In determining a child's best interest, the court shall consider all relevant factors, including, but not limited to:
 {¶ 9} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 10} "(b) If the court has interviewed the child in chambers * * *, the wishes and concerns of the child, as expressed to the court;
 {¶ 11} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 12} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 13} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 14} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 15} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 16} "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in * * * [child abuse, child neglect, or domestic violence];
 {¶ 17} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 18} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state." R.C.3901.04(F)(1).
 {¶ 19} In the present case, the trial court stated that it considered the best interest factors. It observed that while the parties were generally satisfied with the current companionship time, both wanted to be named the residential parent.
 {¶ 20} Regarding appellant, the court found that she was immature. The court noted that appellant has had a number of boyfriends and was planning to marry again shortly after her divorce was final to a man about whom she appeared to know very little. The court opined that although McKaylie is important to appellant, it appeared that McKaylie is not the priority she should be, as sometimes party opportunities take precedence. The court found that there was evidence to suggest appellant has shown a lack of proper concern for McKaylie's medical care.
 {¶ 21} Regarding appellee, the court found that, while he was currently unemployed, he presented a "more stable persona." The court noted that appellee's family provides a great deal of love and support for McKaylie and a natural support system for appellee, once he gains employment. It found that McKaylie has proven her adjustment to residing with her father and grandmother over extended periods. The court also noted that both McKaylie's grandmother and aunt are very dedicated to her care and express concern over appellant's lifestyle, friends, and McKaylie's condition after being in appellant's care.
 {¶ 22} As to other best interest factors, the court indicated that it relied on the GAL's report and the report of a psychologist who evaluated both parties. It also found that the parties were on equal footing regarding facilitating visitation. Additionally, the court found that although appellee had accumulated a support arrearage, he had experienced employment problems and actually had McKaylie in his care for extended time periods.
 {¶ 23} Evaluating the R.C. 3109.04(F)(1) factors in light of the evidence reveals the following. Both parents wished to be named McKaylie's residential parent. However, both were content with the split in parenting time they worked out where they split McKaylie's physical custody approximately 50/50. (Tr. 152, 186, 237). The testimony demonstrated that McKaylie enjoys close bonds with both her mother and father. Additionally, on appellant's side of the family, McKaylie has a 13-year-old half-sister, Tia, with whom she is close. (Tr. 147). On appellee's side of the family, McKaylie has frequent contact with her grandmother, who lives with appellee; her paternal uncle and aunt, who live next door to appellee; and cousins, who live both next-door to and across the street from appellee. (Tr. 196-97, 217). The GAL reported that McKaylie appears bonded and interacts with both appellant and appellee. (Court Exh. 1). There was no evidence that either party suffers from any mental ailments. The only physical ailments reported were that appellant suffers from asthma and diabetes. (Tr. 156). Appellee testified that appellant has allowed him more visitation than that ordered by the court during the preliminary order where appellant was the residential parent. (Tr. 60-61). Appellant testified that on one occasion appellee did not bring McKaylie to see her when he had said he would. (Tr. 127). Appellant does have a child support arrearage. But appellant lost his job of 24 years just three months before the trial. (Tr. 35-37).
 {¶ 24} In addition to the statutory factors, the evidence revealed more insight into the parties' lives. One area the court looked at was appellant's "social life." The GAL indicated that appellant did not know basic information about the man she is engaged to, such as his street address and his children's ages and grades. (Tr. 14). Mark Madison, appellant's cousin, testified about going out to bars and concerts with appellant and about the drinks appellant liked. (Tr. 80-82, 91). Additionally, appellant testified about a "business" trip to New Orleans where her friend brought two strippers to their hotel room and one ended up in her bed, about which she did not tell her husband (Tr. 165). Furthermore, since she separated from appellee, appellant has had at least one live-in boyfriend before her current fiancé, who may or may not live with her. (Tr. 86-87, 135, 162). Thus, evidence exists on the record from which the court could conclude that appellant was a bit immature and had an active social life.
 {¶ 25} Another important area the court looked at was appellee's family. Appellee lives with his mother, Coralie Thomas. (Tr. 34). Appellee's brother and sister-in-law live next door with their daughter. (Tr. 217, 224). Appellee's niece lives across the street. (Tr. 25). Appellee's sister-in-law, Patricia Thomas, testified that McKaylie is a part of the family. (Tr. 217). She stated that appellee spends a lot of time with McKaylie and they often do things with her family. (Tr.221, 225). Appellee's mother also testified that they do things as a family. (Tr. 196). She further testified that she takes McKaylie to church and Sunday school. (Tr. 202).
 {¶ 26} One area of concern seemed to be McKaylie's hygiene when with appellant. Although the GAL noted in her report that McKaylie goes to school clean and appropriately dressed, both Patricia and Coralie expressed concerns about McKaylie's clothes and hygiene when she came from appellant's care. Coralie stated that McKaylie's clothes are sometimes too short or too long and at times, she is not clean. (Tr. 198). Patricia testified that sometimes McKaylie's hair has not been washed in several days, her teeth have not been brushed, her clothes are dirty, and her socks are inside out. (Tr. 218). They also testified about an occasion when McKaylie had lice. Patricia testified that McKaylie's lice infestation had been there for some time yet appellant did not notice it. (Tr. 218-19).
 {¶ 27} Patricia and Coralie may have been predisposed to testify in appellee's favor. This is why appellee called them as witnesses. Appellant called witnesses who were predisposed to testify in her favor, such as her cousin and her friends. In a divorce proceeding, most of the witnesses are bound to be family members and friends because they are the people who have observed the parties and spent time with them. If courts did not consider the testimony of friends and family because these people may be predisposed in favor of one party or the other, courts much of the time would have barely any evidence on which to base their decisions in divorce cases. Therefore, appellant's argument that the court should not have relied on Patricia and Coralie's testimony is without merit.
 {¶ 28} Appellant did present evidence that appellee has been a bit obsessive in his behavior. She and a friend both testified that appellee sometimes called her six to eight times a day and asked to speak to McKaylie to make sure she was with McKaylie. (Tr. 100, 125-26). Appellant also testified that appellee had threatened to run her over with his car and had once pushed her into a refrigerator. (Tr. 132, 148-49). Appellee denied both incidents. (Tr. 69-70, 237).
 {¶ 29} Appellant also presented evidence that while residing with appellee, McKaylie shares a room with her grandmother. (Tr. 209). But when McKaylie stays with her, she has her own room. Also, appellant testified that she has several certificates in tax preparation and real estate and owns her own tax preparation company. (Tr. 135-36). Appellee, on the other hand, is currently unemployed. (Tr. 34).
 {¶ 30} The court also admitted the GAL's report. The GAL found both appellant's and appellee's homes to be appropriate for children. She noted that appellant planned to use the YMCA for childcare during the day and Tia for childcare during the evening; while appellee planned to use his family members for childcare once he began working again. The GAL noted that both parties were content with the shared parenting arrangement they had worked out, yet both wanted to be named the residential parent so that they could have the final say on decisions involving childcare, physicians, and education. She voiced concern over appellant's lack of ability to provide basic information involving her children and her fiancé For example, appellant could not tell her the location in Florida of Tia's birth. Based on her observations, the GAL opined that appellee "may be better suited to make the final decisions in McKaylie's life." The GAL confirmed her opinion in her testimony.
 {¶ 31} Finally, the court considered the psychologist's report. The psychologist evaluated both parties and concluded:
 {¶ 32} "Currently, Mr. Thomas seems to be the more focused on McKaylie. This probably is a reflection of his more conservative lifestyle orientation. Neither parent presented evidence of being psychologically unfit to parent by contemporary standards. It seems that, given their current dispositions, Mr. Thomas would be the more reliable and offer the most predictable domestic structure. He would be the more inclined to mete consistent discipline and to put his children's interests above his own." (Court Exh. 2).
 {¶ 33} Thus, the GAL and the psychologist indicated that, while both parties may be appropriate parents, appellee would be better suited at this time to be named the residential parent.
 {¶ 34} After examining the evidence, we conclude the trial court acted within its discretion in naming appellee as McKaylie's residential parent. There is no indication on the record that the trial court acted unreasonably, arbitrarily, or unconscionably. While either parent would have made a suitable residential parent, because competent and credible evidence exists to support the court's decision, we must overrule appellant's assignment of error.
 {¶ 35} For the reasons stated above, the trial court's decision is hereby affirmed.
Judgment affirmed.
Waite, P.J. and DeGenaro, J. concur.