OPINION
{¶ 1} Appellant, Tabitha S., appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, naming appellee, Stephen S., the residential parent and legal custodian of their daughter, E.S., and ordering equal parenting time. We affirm.
 {¶ 2} E.S. was born on March 23, 2003 to Tabitha and Stephen. The parents were not married and did not live together. After her birth, E.S. lived with her mother. In July 2003, Stephen moved for custody of E.S. By ex parte order, Stephen was granted temporary custody of the child. Following a shelter care hearing in August 2003, E.S. was returned to Tabitha and Stephen was granted visitation. On February 27, 2004, following a hearing to determine which parent should be the child's legal custodian and residential parent, the magistrate issued the following decision:
 {¶ 3} "As the issue of custody has never been litigated between these parties, * * * the court must treat the mother and father as standing upon an equality when making the designation of residential parent/legal custodian. Neither parent filed a motion for shared parenting * * *. Therefore, pursuant to [R.C.] 3109.04(A)(1) the court, in a manner consistent with the best interest of the child, must allocate the parental rights and responsibilities for the care of the child primarily to one of the parents, designating that parent as the residential parent and the legal custodian of the child. * * *
 {¶ 4} "Because of [E.S.'s] young age, the court finds that it is the child's best interest that both parents have as much time as possible with [E.S.] to develop and nurture a relationship with her. By his actions, father has demonstrated his intention to try to be a stable parent for [E.S.] Mother has provided good care for the child but still has substance abuse and anger management issues.
 {¶ 5} "Therefore, the court finds based upon * * * a preponderance of the evidence that it is in the child's best interest that the parties share parenting time as equal as possible but that father be designated as the residential parent and legal custodian of the child."
 {¶ 6} The trial court granted Stephen parenting time from Saturday noon to Wednesday morning at 8 a.m., and Tabitha parenting time from Wednesday morning at 8 a.m. to Saturday noon. On April 5, 2004, the trial court overruled Tabitha's objections and adopted the magistrate's decision. This appeal followed.
 {¶ 7} In a single assignment of error, Tabitha argues that the trial court's decision granting equal parenting time and designating Stephen as the residential parent is not supported by clear and convincing evidence. We disagree.
 {¶ 8} We note at the outset that we will not review the trial court's decision under a clear and convincing evidence standard. It is well-established that a trial court's decision regarding the custody of a child will not be reversed absent an abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142, syllabus;Simmons v. Willett, Morgan App. No. 02 CA 8, 2003-Ohio-3677. An abuse of discretion connotes more than an error in law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Rather, an appellate court's role is to ascertain whether the award of custody is supported by competent and credible evidence. See Davis v. Flickinger,77 Ohio St.3d 415, 1997-Ohio-260. Because it observes the proceedings firsthand, the trial court is in a far better position to observe the witnesses' demeanor and weigh their credibility. SeeSimmons.
 {¶ 9} When making an original allocation of parental rights and responsibilities, the trial court must consider the best interest of the child. R.C. 3109.04(B)(1). In determining the child's best interest, the court must consider all relevant factors, including, but not limited to the ten factors listed in R.C. 3109.04(F)(1).
 {¶ 10} The record shows that the trial court carefully considered all applicable factors under R.C. 3109.04(F)(1). The trial court found, and the record supports those findings, that (1) both parents have adequate residences to meet the child's daily needs; (2) there was little evidence presented regarding the interaction of the child with either parent; (3) the parents cannot work out parenting time issues amicably; (4) both parents are involved in significant relationships with another person, and there was no evidence that either Tabitha's boyfriend or Stephen's girlfriend presented any kind of threat to the child; (5) both parents have admitted to marijuana use in the past and were ordered to participate in substance abuse treatment; and (6) Tabitha was convicted of domestic violence for hitting Stephen.
 {¶ 11} The record also shows that (1) both parents have persons that can baby-sit the child if need be; (2) while Tabitha's boyfriend has accompanied her when she takes the child to the doctor, Tabitha has until recently been reluctant to keep Stephen apprised of the identity of the child's doctors; and (3) at the time of the custody hearing, Stephen had been employed at a sausage company for a year whereas Tabitha had been working full time for her boyfriend's employer for only two weeks.
 {¶ 12} Ultimately, the trial court granted shared parenting time and named Stephen as the residential parent based upon the issue of maturity, as follows:
 {¶ 13} "When father first filed his complaint for custody * * *, he was residing in a studio apartment [in fact, a motel] and did not have an appropriate bed for [E.S.]. * * * Father had been living [there] so that he could walk to work until he got his license reinstated. Since [the shelter care] hearing, father has obtained suitable housing, regained his driver's license, purchased a car, obtained necessary baby items for [E.S.] [including a crib], and maintained employment in a sausage factory. He has just obtained health insurance for [E.S.]. He has also participated in substance abuse treatment for the last six months, and continues in treatment due to [one] relapse. The court's only concern for father is that he does not have much time to sleep because of his long work hours."
 {¶ 14} Stephen testified that his regular shift is from 11:30 p.m. to 6 a.m., but that he typically works from 8:45 p.m. to 6:30-7 a.m. to get overtime. He also testified that when she is not working, his girlfriend can watch E.S. so that he can sleep. Likewise, the child's godparents can watch her, if need be, so that he can sleep a few hours. Stephen testified he started the substance abuse treatment before it was ordered by the court, that he was back in treatment due to his smoking marijuana three weeks before the full hearing, and that he was going to "keep working this program till I stay clean." Stephen also testified he was studying to take the GED and to get his CDL driver's license.
 {¶ 15} With regard to Tabitha's maturity, the trial court found that "[s]he has only been in [substance abuse] treatment in the last month. She still has to complete anger management classes. She does not have a driver's license due to conviction for driving without a license. Mother seems to have obtained some stability in her life because of her relationship with her boyfriend. He has helped her obtain employment with him. She will be moving in with him.
 {¶ 16} "Nevertheless, what is disconcerting about mother is that she has not yet demonstrated to this court that she can curb her anger when she is antagonized. She was convicted of domestic violence with the father. She has just recently had an altercation with her brother. She appeared in court [for the full hearing] with a black eye. * * * [T]he court found [maternal grandmother] credible as to her statements regarding mother's problem with anger management. While there has been no evidence presented that mother has ever endangered [E.S.], it is concerning to this magistrate how mother will handle [E.S.] as she gets a little older and begins to exert her will as a toddler."
 {¶ 17} Both Stephen and Tonya Haggard, Tabitha's mother, expressed concerns about Tabitha's temper. In particular, Haggard testified that Tabitha (1) needs serious help with her temper, (2) strikes out and takes it out on people, including when she cannot smoke marijuana, and (3) has struck Haggard's boyfriend and son in the past. Haggard testified she was "in fear that if she doesn't get some help of how the baby will be reacted towards[.]"
 {¶ 18} Although she was ordered in early November 2003 to complete her substance abuse treatment, Tabitha did not start the treatment until January 2004. At the full hearing in February 2004, Tabitha admitted testing positive for marijuana in January 2004 before starting the treatment but testified she had since quit smoking marijuana. Tabitha testified that her mother's testimony was a lie, and that Stephen needed anger management classes. The record shows that as a result of her domestic violence conviction, Tabitha was ordered to attend anger management classes and pay fines. Tabitha testified she was on a waiting list for anger management classes until April 2004, that her driver's license was still suspended, and that she was working on paying the fines for her domestic violence conviction.
 {¶ 19} Tabitha challenges the trial court's reliance on "maturity" in determining the residential parent status. However, a trial court is not limited to the factors listed In R.C.3109.04(F) in determining custody issues, but may consider any "relevant factors." Id. The maturity and stability of one parent is a proper and relevant factor for a trial court to consider. See Thomas v. Thomas, Columbiana App. No. 03 CO 9,2003-Ohio-6393.
 {¶ 20} Considering that (1) Tabitha has substance abuse and anger management issues with which she has not fully dealt; (2) Tabitha has been unwilling in the past to let Stephen spend much time with the child and has, in fact, violated previous court orders giving visitation to Stephen; (3) Stephen has taken the necessary steps, including substance abuse treatment, to change his lifestyle so that he can properly provide and care for the child; (4) both parents want to be involved in their child's life; and (5) they both love and adequately care for the child, we find that the trial court did not err in granting equal parenting time and naming Stephen the residential parent and legal custodian of the child. Upon a careful review of the record, we cannot say that the trial court acted unreasonably, arbitrarily, or unconscionably. The assignment of error is overruled.
 {¶ 21} Judgment affirmed.
Walsh, P.J., and Bressler, J., concur.